```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :      CRIMINAL ACTION
                                :
           v.                   :
                                :
NOLAN HUGH                      :      NO. 03-829
```

MEMORANDUM

Bartle, C.J.                                         January 28, 2009

Before the court is the motion of defendant Nolan Hugh under 28 U.S.C. § 2255 to correct, vacate, or set aside his conviction and sentence.

On February 4, 2005, a jury found Hugh guilty of (1) conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); (2) interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); and (3) carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The court imposed a within-guidelines sentence of 180 months' imprisonment, five years' supervised release, restitution of $28,777.27, and a special assessment of $300. Our Court of Appeals affirmed Hugh's conviction on July 18, 2007. After the Court rejected his petition for rehearing *en banc*, the mandate was issued on November 7, 2007. The instant motion, filed on September 15, 2008, is timely.

Hugh now maintains that he is entitled to a new trial because of ineffective assistance of trial counsel under the

standard set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). He faults his counsel for failing to (1) move to suppress the victim's identification of Hugh as one of her assailants from a photo spread prepared by police; (2) move into evidence the record of an interview with the victim; and (3) rebut adequately the government's fingerprint expert. He also raises for the first time a new alibi in support of his contention that he is actually innocent of the crimes for which he was convicted.

I.

On May 24, 2003, Ms. Alyia Hasan was working alone at a check cashing agency in west Philadelphia. Around 11:30 a.m., a man entered the business and approached the counter area behind which Ms. Hasan was protected by a plexiglas window and locked security doors. The man, who appeared "antsy" and was behaving "erratically," asked Ms. Hasan for change. She denied his request. The man was plainly agitated by Ms. Hasan's refusal but eventually left the location.

At about 1:00 p.m. that same day, a different man wearing a mail carrier's uniform entered the agency and indicated that a package in his possession was for Ms. Hasan. As she exited the secured area to receive the package, a second man struck her in the head with a handgun. The two men moved to the now-accessible secured area and demanded money. Each displayed a handgun at that point. The man in the mail carrier's uniform pressed the barrel of his gun against Ms. Hasan's face. This

forced her to look in the direction of the other man who now seemed to be serving as a lookout. Ms. Hasan immediately recognized the latter as the same individual who had asked her for change earlier in the day. After striking Ms. Hasan again and threatening to lock her inside a safe, the robbers fled the agency in possession of several of Ms. Hasan's personal belongings and over $28,000 in cash. Left behind was the empty package they had employed in their ruse.

Shortly after the robbery, Ms. Hasan made a statement to Philadelphia police in which she described the intruders. In particular, she noted that the man serving as lookout was "well-groomed" and had "nice hair" and a "Muslim-type" beard. That statement was typed onto a Philadelphia Police Department Investigation Interview Record form (the "Interview Record") and signed by Ms. Hasan. Over the course of several follow-up visits to the police station, Ms. Hasan reviewed hundreds of photographs of potential suspects but did not recognize her assailants among them.

In the meantime, police technicians recovered a latent fingerprint from the package abandoned at the crime scene. An experienced fingerprint identification expert, Clifford Parson, determined that the recovered print was an exact match with a print already on file belonging to the defendant, Nolan Hugh. Six days after the robbery, the police arranged another photo spread for Ms. Hasan consisting of eight pictures of bearded men, among which was a photograph of defendant. Ms. Hasan confidently

identified him as the man who had asked for change before the robbery and as the one not wearing the mail carrier's uniform during the robbery itself.

At trial, Ms. Hasan described the events of May 24, 2003 and her subsequent identification of Hugh in the photo spread.  Mr. Parson, the government's fingerprint expert, then testified that he was "100 percent, without a doubt" certain that "the latent print is that of Nolan Hugh."  Defense counsel aggressively cross-examined Mr. Parson and presented a competing expert on fingerprint methodology, Dr. Ralph Haber, who testified that Mr. Parson's methods and conclusions were unsound.

The prosecution also introduced evidence that Hugh, a welfare recipient, made conspicuous purchases and began giving money to relatives in the days following the robbery.  Hugh's girlfriend and her sister testified that he had made statements to them indicating he had been involved in illegal activity as a lookout and that he believed he had received less than his share of the proceeds from the enterprise.

Defense counsel attempted to impeach Ms. Hasan's trial testimony with her statement from the Interview Record that she was unable to remember specifically what Hugh had requested at her first encounter with him at 11:30 a.m. on the day of the robbery.  Counsel also tried to impeach Ms. Hasan's trial testimony that she had noticed Hugh's "nice hair" on the day of the robbery with her statement in the Interview Record that Hugh had been wearing a hood or a cap during his appearances in the

agency.  Defense counsel did not, however, move to admit either statement into evidence.

During his closing argument, defense counsel argued to the jury that Ms. Hasan's identification of the defendant from the photo spread should be disregarded because he was the only person in the included photographs who matched the description initially provided by Ms. Hasan to the police.  At the conclusion of closing arguments, defense counsel requested that the Interview Record and another police report be sent back to the jury room.  The court denied this request on the grounds that the reports had not been admitted into evidence and in any event constituted inadmissible hearsay.

II.

In the motion now before us, Hugh argues generally that his trial counsel provided him with ineffective assistance in violation of his rights under the Sixth Amendment to the United States Constitution.  In order to establish a claim of ineffective assistance of counsel Hugh must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  With respect to the first Strickland prong, the Supreme Court has refused to "articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that the proper measure of attorney

performance "remains simply reasonableness under prevailing professional norms." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Nonetheless, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (quotation omitted).

To overcome that presumption, "a habeas petitioner must show either that:  (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005).  Our Court of Appeals has recently described the complex framework as follows:

> At first, the presumption is that counsel's conduct might have been part of a sound strategy.  The defendant can rebut this "weak" presumption by showing either that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound.  In cases in which the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy posited by the [government] could have supported the conduct.  However, if the [government] can show that counsel actually pursued an informed strategy (one decided upon after a thorough investigation of the relevant law and facts), the "weak" presumption becomes a "strong" presumption, which is "virtually unchallengeable."

Id. (citations omitted).

It is Hugh's first contention that his trial counsel should have moved to suppress Ms. Hasan's identification of him in a police-prepared photo spread.  We must therefore determine whether this act of potential nonfeasance "might have been part of a sound strategy."  Because the record is silent as to counsel's actual strategy, the burden is on defendant to show that "no sound strategy posited by the [government] could have supported the conduct."  Id.

The government proposes that defense counsel intentionally eschewed a motion to suppress the photo spread as part of a reasonable but ultimately unsuccessful gambit.  Counsel's strategy, according to the government, was to convince the jury that the entirety of Ms. Hasan's identification testimony should be discounted because of her exposure to what he contended was an unduly suggestive photo spread.

Even assuming that defense counsel had no sound basis for his strategy, defendant cannot prevail here.  Under the second Strickland prong, Hugh must show that he "would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted."  Id. at 503.  In ruling on a motion to suppress of this sort, our first question would have been whether the contested identification procedure was unnecessarily suggestive.  Id.  The United States Supreme Court has explained that even if the photo spread was unduly suggestive, however, the

court must still examine the totality of the circumstances to determine whether the identification itself was reliable. Neil v. Biggers, 409 U.S. 188, 199-200 (1972). Relevant factors include:

> (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

Id.

Here, it is unnecessary for us to address whether the photo spread was unduly suggestive[1] because we find under the circumstances that Ms. Hasan's identification was reliable. First, Ms. Hasan had ample opportunity to view defendant before and during the robbery itself. She testified that the building's secured area was well-lighted and that she was able to view defendant for several minutes during his initial visit to the agency and for almost half an hour during the second. Second, Ms. Hasan testified that she paid particular attention to defendant during his first visit because of his odd behavior and

---

1. Defense counsel's primary argument in this respect was that Hugh was the only individual displayed in the photo spread who matched Ms. Hasan's initial description of a "well-groomed" man having "nice hair" and a "Muslim-type" beard. We note that all eight men in the photos presented to Ms. Hasan were, like defendant, bearded.

   Moreover, there is no indication that police behavior was unduly suggestive. During her trial testimony Ms. Hasan stated that an officer called her in, presented her with the pictures, and told her to "just sit there, take [your] time, and look at it and ... let us know if any of these people look familiar to you."

that she paid rapt attention to him throughout the later robbery. Third, she described him with a considerable level of detail to police immediately after the incident.  Fourth, upon seeing the photo of defendant Ms. Hasan demonstrated a high degree of certainty that he was one of the robbers.  She made that association based on "his features, his eyes, just everything about him," and not simply on the fact that the individual in the photo was bearded and well-groomed. Finally, she selected defendant from the photo spread within a week of the incident.

Under the totality of the circumstances, Ms. Hasan's identification of Nolan Hugh as the unmasked individual who visited the agency in the late morning of May 24th, 2003 and returned later that same day to threaten and assault her at gunpoint was manifestly reliable.  We would not have suppressed her identification of defendant from a police-provided photo spread.  Consequently, the outcome of the trial would not have been different even if defense counsel had made the appropriate motion in limine.  We will deny Hugh's § 2255 motion insofar as it is based upon his counsel's failure to move to suppress evidence of the photo spread.

Hugh next contends that his counsel unreasonably failed to move the Interview Record into evidence.  We need not address whether this failure was objectively unreasonable in violation of <u>Strickland</u> because Hugh cannot establish prejudice.  Our Court of Appeals has already affirmed the district court's ruling that the Interview Record was inadmissible hearsay.  See <u>Hugh</u>, 236 Fed.

App'x at 799-801.  No possibility exists, therefore, that "the result of the proceedings would have been different" if Hugh's counsel had moved for the admission of the Interview Record. Strickland, 466 U.S. at 694.  The jury would still not have been permitted to view it during deliberations.  We will deny Hugh's motion in this respect.

Hugh also alleges that his counsel failed to rebut adequately the conclusions of the government's fingerprint expert, Mr. Parson.  The record belies Hugh's claim.  Defense counsel vigorously contested the state's fingerprint evidence through cross-examination.  Counsel obtained a private expert, Dr. Haber, to dispute the methodology employed by the government witness.  Hugh is not entitled to relief simply because the jury apparently chose to credit the testimony of the government expert rather than that of Dr. Haber.

Lastly, Hugh claims that he is entitled to collateral relief under § 2255 because he is actually innocent of the crimes for which he is imprisoned.  In the instant motion, Hugh asserts for the first time that he was an inpatient at a local drug treatment facility on the date of the robbery.  He seeks discovery of the facility's records in support of this alibi.

The Supreme Court has held squarely that a claim of "actual innocence" is not cognizable on habeas review unless it is predicated on a denial of some constitutional right.  Herrera v. Collins, 506 U.S. 390, 404 (1993); see also United States v. Dill, 555 F. Supp. 2d 514, 519 (E.D. Pa. 2008).  Hugh does not

allege that he was denied due process, that is, that he was denied an opportunity to present his alibi evidence at the time of trial.  He likewise offers no explanation for his failure to avail himself of Rule 33 of the Federal Rules of Criminal Procedure, which permits a district court to grant a new trial on the basis of "newly discovered evidence" where the defendant makes such a motion "within 3 years after the verdict."[2]  Because Hugh's motion is not the proper channel for his claim of actual innocence, we will deny his motion in that respect.

      For the reasons stated above, the motion of Nolan Hugh pursuant to 28 U.S.C. § 2255 will be denied.

---

2.  The jury returned its verdict against Hugh on February 4, 2005.  Consequently, Hugh's time for filing a motion under Rule 33 appears to have elapsed.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| NOLAN HUGH | : | NO. 03-829 |

ORDER

AND NOW, this 28th day of January, 2009, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendant Nolan Hugh to correct, vacate, or set aside his conviction and sentence pursuant to 28 U.S.C. § 2255 is DENIED; and

(2)  a certificate of appealability will not issue.

BY THE COURT:


/s/ Harvey Bartle III
C.J.